UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SHAWN M. WIEAS, ) | CASE NO. 3:13CV1571 |
| ) | |
| Plaintiff, ) | JUDGE JEFFREY J. HELMICK |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| CAROLYN W. COLVIN[1], ) | **REPORT AND RECOMMENDATION** |
| ACTING COMMISSIONER OF ) | **OF MAGISTRATE JUDGE** |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Shawn M. Wieas ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB") . ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case with prejudice.

## I.   PROCEDURAL AND FACTUAL HISTORY

Plaintiff applied for DIB on June 2, 2009, alleging disability since August 1, 2008. Tr. at 81. Plaintiff's date last insured is March 31, 2013. Tr. at 27. The SSA denied Plaintiff's applications initially and on reconsideration. Tr. at 81-82. Plaintiff requested an administrative hearing, and on October 4, 2011, an ALJ conducted an administrative hearing and accepted the testimony of Plaintiff and Pauline Pegram, an impartial vocational expert ("VE"). Tr. at 42-80. On January 4, 2012, the ALJ issued a Decision denying benefits. Tr. at 25-34. Plaintiff appealed the Decision, and on May 1, 2013, the Appeals Council denied review. Tr. at 4-7.

On July 19, 2013, Plaintiff filed the instant suit seeking review of the Decision. ECF Dkt. #1. On November 25, 2013, with leave of Court, Plaintiff filed a brief on the merits. ECF Dkt. #14.

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, replacing Michael J. Astrue.

On December 24, 2013, Defendant filed a brief on the merits. ECF Dkt. #15. A reply brief was filed with leave of Court on February 20, 2014. ECF Dkt. #18.

**II.** **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from chronic obstructive pulmonary disease ("COPD"), history of burns with skin grafting, possible impingement of the right shoulder, and adjustment disorder with anxiety, which qualified as severe impairments under 20 C.F.R. §404.1520(c). Tr. at 27. The ALJ further determined that Plaintiff suffered from Hepatitis C and hypertension, which qualified as non-severe impairments. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526 ("Listings"). Tr. at 27-29.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he can never climb ladders, ropes, or scaffolding; rarely (defined as less than occasionally but not completely precluded) crawl; occasionally kneel, crouch, and reach overhead bilaterally; frequently handle and finger; withstand occasional exposure to respiratory irritants, such as fumes, odors, dusts, and gases; work where the pace of productivity is not dictated by an external source over which Plaintiff has no control, such as an assembly line or conveyor belt; and contact with the public, co-workers, and supervisors should be superficial with no interdependence upon others for work activities. Tr. at 30.

The ALJ ultimately concluded that Plaintiff could not perform his past relevant work as a delivery driver. Tr. at 33. As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits.

**III.** **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

    1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

  2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

  3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

  4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

  5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV. STANDARD OF REVIEW**

  Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

  The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the

-3-

record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.     ANALYSIS

Plaintiff advances three arguments in this appeal. First, Plaintiff contends that the ALJ improperly weighed the opinion evidence in the record. Second, Plaintiff argues that the ALJ failed to properly assess Plaintiff's credibility. Finally, in an argument which essentially restates his first argument in different terms, Plaintiff contends that the ALJ erred in fashioning Plaintiff's RFC.

### A.     Medical history

In 1981, when Plaintiff was two years of age, he was the victim of a house fire and sustained second and third degree burns to several areas of his body, including his face, shoulders, and hands. Tr. at 356. As a result of the burns, Plaintiff underwent extensive skin grafting procedures.

On May 11, 2007, Plaintiff went to the emergency room at St. Charles Hospital complaining of chronic abdominal pain, which had been ongoing for period of seven months. Tr. at 324. Plaintiff informed Lynn Mason, M.D., that he was suffering from intense stomach pain that radiated down into his lower quadrant. Tr. at 327-328. On May 29, 2007, Plaintiff tested positive for Hepatitis C. Tr. 309.

On March 11, 2008, approximately five months prior to Plaintiff's alleged disability onset date, x-rays of his shoulders showed that he had no fracture or acute osseous abnormality, but that he could be predisposed to rotator cuff impingement syndrome. Tr. at 320. According to treatment records, Plaintiff injured his should after falling from a balcony during an altercation. Tr. at 440.

On April 15, 2009, Shakil Khan, M.D., performed a study showing that Plaintiff's airway resistance was normal, his lung capacity was normal, but that he had a mild obstructive ventilator defect.Tr. at 390.

On June 19, 2009, x-rays of Plaintiff's left-hand showed that his osseous structures were normal, he had no fracture, dislocation, marginal erosion, or soft tissue calcifications. Tr. at 313. Plaintiff's joint spaces were well preserved, and he had only a slight tissue edema around the proximal interphalangeal joints of the third and fourth digits. X-rays of Plaintiff's right hand also showed no fracture, dislocation, bone destruction, or marginal erosion, and his joint spaces are well preserved. Tr. at 314. He had a mild soft tissue edema around the proximal interphalangeal joints of the second, third, and fourth digits.

On July 2, 2009, Daryl Lajiness, D.C., opined that Plaintiff suffered moderate to severe chronic neck and low back pain with chronic muscle spasms and myofascial trigger points. Tr. at 348. However, Plaintiff's range of motion in his spine was normal, there was no indication that he had limitations on his fine and gross manipulation, his gait was normal, and chiropractic treatment provided temporary pain relief. Dr. Lajiness also noted that Plaintiff could use his extremities for functional tasks.

On August 5, 2009, psychiatrist Sonja Pinsky, M.D., conducted a consultative examination. Tr. at 355. Dr. Pinsky noted that Plaintiff drove himself to the appointment, but claimed he could not work due to problems with his hands following a childhood injury. Tr. at 355. Dr. Pinsky wrote that Plaintiff had not had psychological hospitalization or been in treatment, but that his family doctor started treating him for anxiety five months ago. Tr. at 356. Dr. Pinsky observed that Plaintiff's behavior and speech were unremarkable, he was cooperative, and his thinking was clear. At the time of the exam, Plaintiff was fully oriented with no delusions or hallucinations, and he had limited insight, but adequate judgment. Tr. at 357.

Despite Plaintiff's complaints that his skin grafting had left him with limited use of his hands and that they ached, felt tight, cramped, tingled, and felt numb, he reported to Dr. Pinsky that he could type and he had good strength in both hands. Tr. at 356. Plaintiff denied experiencing depression, but he claimed to have difficulty sleeping due to pain in his hands and back. Tr. at 357. Plaintiff reported that he experienced anxiety and was easily irritated and upset if confronted, but he claimed he did not fight. Tr. at 357. He reported that his family physician prescribed

Hydroxyzine, which helped alleviate his anxiety. Plaintiff also reported that he drank about four beers per day for many years.[2] Tr. at 356.

Dr. Pinsky diagnosed Plaintiff with alcohol use and probable dependence and adjustment disorder with anxious mood. Tr. at 358. She assigned a Global Assessment of Functioning ("GAF") score of sixty[3], indicating only moderate impairment. Dr. Pinsky opined that Plaintiff would have mild to moderate impairment relating to others; his ability to understand and follow instructions might be mildly to moderately impaired; his ability to maintain attention and concentration to perform a simple repetitive task might be mildly to moderately impaired; and his ability to withstand the stress and pressure of daily work might be moderately impaired. Tr. at 358-59.

On August 22, 2009, psychologist Mel Zwissler, Ph.D., reviewed Plaintiff's medical records and diagnosed Plaintiff with adjustment disorder, borderline IQ scores, and probable alcohol dependence. Tr. at 363-64, 368. He found that Plaintiff only had mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and he had experienced no episodes of extended decompensation Tr. at 370. Dr. Zwissler concluded that Plaintiff would be capable of performing simple to moderately complex work tasks in a work environment where interaction with others would be limited to an occasional basis. Tr. at 376.

On August 28, 2009, Sushil Sethi, M.D., conducted a consultative examination. Tr. at 380. Dr. Sethi noted that Plaintiff had skin grafts on the right side of his face, neck and right hand. Plaintiff demonstrated occasional expiratory wheezes and rhonchi due to his smoking habit, but there were no hoarse crepitations or bronchial breathing.

Plaintiff's lower extremities showed no edema or other problems, all of his joints showed normal range of motion, he was able to walk on his tiptoes and heels, and he could squat. Tr. at 380.

---

[2]At a consultative exam later that month, Plaintiff reported drinking a six-pack of beer per week. Tr. at 380.

[3]The GAF scale ranges from zero to one hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition ("DSM-IV")(American Psychiatric Association 1994). A GAF score of fifty-one to sixty denotes moderate symptoms. DSM-IV at 34.

Plaintiff did not use an ambulatory aid, and his gait was normal. His upper extremities also showed normal range of motion, as did the fingers in his right hand. Tr. at 381. Plaintiff, who is right-handed, had some web formation between his second and third fingers on his right hand due to his skin graft.

Plaintiff underwent manual muscle testing and Dr. Sethi reported full strength in Plaintiff's hips, knees, feet, shoulders, elbows, wrists, and fingers. Tr. at 382. He further reported normal grasp, manipulation, pinch, and fine coordination in both hands. Plaintiff also had no muscle weakness or atrophy. His cervical, thoracic, and lumbar spine had normal range of motion, no curvature abnormalities, muscle spasms, or swelling.

Dr. Sethi diagnosed Hepatitis C, history of burns to the face, right arm and hand, hypertension without heart failure, anxiety, and gastric reflux. Tr. at 381. Despite Dr. Sethi's relatively benign findings, he concluded that, Plaintiff's ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects and traveling may be limited, but his hearing and speaking were normal.

On October 14, 2009, Myung Cho, M.D., reviewed Plaintiff's medical records and found that his complaints were only partially credible because his subjective complaints were often inconsistent with objective medical findings. Tr. at 420. Dr. Cho noted that, although Plaintiff claimed that he could hardly bend his fingers, exams showed he had normal range of motion. Plaintiff also claimed that he had continuous back and neck pain, but examinations demonstrated that he had a normal range of motion in his back and neck, and he had normal findings without pain in his most recent exam. Dr. Cho also noted that Plaintiff's grasp, manipulation, and fine coordination were normal bilaterally.

On January 8, 2010, reviewing psychologist Kristen Haskins, Psy.D., affirmed the findings of Dr. Zwissler, who concluded that Plaintiff would be capable of performing simple to moderately complex work tasks in a work environment where interaction with others would be limited to an occasional basis. Tr. at 421. Additionally, Dr. Haskins noted that Plaintiff was only partially credible due to the disconnect between his self-reported symptoms and the objective medical testing. Tr. at 421.

On February 22, 2010, Plaintiff saw Peter J. Reilly, M.D., of the Northwest Ohio Gastroenterology Associates.  Dr. Reilly explained that Plaintiff had not sought treatment for his Hepatitis C due to a personality conflict with the diagnosing physician. Tr. at 445. Plaintiff sought treatment due to the emergence of a new set of gastrointestinal symptoms.  Plaintiff reported abdominal pain after eating, but conceded that his strength and stamina remained unchanged. Plaintiff also reported depression brought on by his financial problems.  Dr. Reilly opined that Plaintiff likely contracted Hepatitis C as a result of undergoing multiple transfusions after being burned in the house fire in 1981. Tr.  at 445. Dr. Reilly emphasized the critical importance of alcohol avoidance and recommended further testing.

On March 31, 2010, Plaintiff's liver biopsy revealed grade two or three inflammation and stage two fibrosis. Tr. at 447. Dr. Reilly encouraged Plaintiff to move forward with antiviral therapy. Tr. at 447.  In addition, Dr. Reilly suggested that Plaintiff seek treatment with a mental health professional while undergoing interferon treatment, due to the potential exacerbation of mental problems associated with interferon use.

On February 24, 2010, Dr. Khan diagnosed Plaintiff with COPD. Tr. at 438-439. Plaintiff's sleep screen yielded normal results. Tr. at 439.  Plaintiff was prescribed Symbicort and was encouraged to stop smoking.

On March 11, 2010, Kirk Davis, D.O., examined Plaintiff and reviewed x-rays of his knee and shoulder, due to Plaintiff's complaint of increasing left knee and shoulder pain over the course of the previous four weeks.  Tr. at 440-41. Plaintiff indicated that his shoulder pain dated back to 2008 and explained that he injured his shoulder as a result of an altercation during which he fell from a balcony. Tr. at 440. At the time of the exam, Plaintiff's gait was normal, although he complained of knee pain and demonstrated limited range of motion. Tr. at 440. Despite his complaints, Plaintiff's examination revealed no effusion, and good quad tone with some hamstring tightness.  Dr. Davis found that Plaintiff had "[m]ild at best degenerative changes of [the] left knee" and mild osteoarthritis of the left shoulder. Tr. at 441. Plaintiff opted to continue over-the-counter NSAIDs and physical therapy.

On August 17, 2010, Dr. Reilly reported that Plaintiff was doing reasonably well with interferon and ribavarin therapy. Tr. at 449. Plaintiff initially suffered nausea, anorexia, and generalized weakness, but began taking Motrin on the day of his injection, which relieved the side effects of the treatment. Plaintiff continued drinking alcohol despite expressing a complete understanding of the risks. Dr. Reilly observed that Plaintiff's prognosis looked quite favorable.

On September 2, 2010, H. Dale Arnold, M.Ed, PT, ATC, a certified work performance evaluator at ErgoScience, completed a Physical Work Performance Evaluation form. Tr. at 442. Mr. Arnold opined that Plaintiff was capable of performing light work for an eight-hour workday. Mr. Arnold further opined that Plaintiff could lift up to twenty-seven pounds (twenty-three pounds with his right hand and twenty-seven pounds with his left hand), and he was able to frequently walk, sit, and stand. Tr. at 443. Plaintiff could also occasionally work with his arms overhead while standing or stooping, and his manual dexterity was adequate. Tr. at 443-44. However, Mr. Arnold also opined that Plaintiff's finger dexterity was "inadequate" and his grip strength was diminished, especially in his right hand. Tr. at 444.

On November 23, 2010, Dr. Reilly reported that Plaintiff has had a positive response to the antiviral medications and had maintained his weight despite some degree of appetite loss. Tr. at 451. Plaintiff's physical examination yielded normal results. Dr. Reilly characterized Plaintiff's early virologic response to treatment as excellent.

Finally, on January 20, 2012, Daryl Lajiness, D.C., wrote in his chiropractic treatment notes that Plaintiff was receiving one to two spinal manipulations per month. Tr. at 453. Dr. Lajiness opined that, with continued treatment, Plaintiff's prognosis was good.

### B.     Hearing testimony

Plaintiff, who was thirty-two years of age at the hearing, and twenty-nine years of age on his alleged onset date, testified that he was married with a fifteen year-old daughter. Tr. at 46. He had a drivers' license but testified that he had difficulty driving more than twenty-five minutes. Plaintiff completed the ninth grade but "never got past the pretest" for a GED. Tr. at 47.

Plaintiff testified that he suffered pain, numbness, and swelling in his hands, and that the pain worsened during the last two years of his delivery driving job, but that he sought no treatment. Tr.

-9-

at 50. He further testified that a physician told him that there is little that can be done for bone and nerve degeneration. Tr. at 51-52. Plaintiff conceded that he had been terminated from his delivery driving job for a speeding violation, and, that, otherwise, he would still be a delivery driver. Tr. at 53-54. Plaintiff is right-handed, and could write and button his clothes, but was unable to use a keyboard. Tr. at 53.

Plaintiff testified that his hands prevent him from working. Tr. at 60. He experiences weakness in his hands, and a lack of grip strength. Tr. at 65. Plaintiff's hands hurt all day and the pain is aggravated by a lot of activity. Plaintiff wears braces at night. Plaintiff further testified that he has lower back pain and that his back tenses up all day. Tr. at 66. Plaintiff also experiences pain in his shoulders and has difficulty lifting things. He testified that he has difficulty lifting his right arm or lifting more than fifteen pounds. Tr. at 58. He attributed his shoulder pain to a fractured rotator cuff.

In addition to the problems with his hands, back and shoulders, Plaintiff testified that he suffers from shortness of breath a couple of times a day due to his acute bronchitis (COPD), which is treated with Symbicort. Tr. at 54. Plaintiff described himself as a "light smoker," attesting to smoking one or two cigarettes per day. Tr. at 60. He suffers nausea from both his Hepatitis C and his medications, which included Symbicort, Hydroxyzine, Omeprazole, Tylenol, Motrin, and hypertension medication. Tr. at 55-56.

Plaintiff suffers anxiety attacks five to seven times a day, which are five to eight minutes in duration. Tr. at 58-59. They began in 2008 after he lost his job. Plaintiff described himself as "high-tempered." Tr. at 61.

Plaintiff testified that he can walk a mile and stand or sit for forty-five minutes at a time. Tr. at 60. He sleeps roughly three hours a night and "cat-naps" for fifteen or twenty minutes approximately three times a day. Tr. at 62. He takes his daughter to school and picks her up each day. Tr. at 63.

### C.     The ALJ's decision

The ALJ gave great weight to the physical assessment of Mr. Arnold despite the fact that a physical therapist is not considered an acceptable medical source within the regulatory definition,

-10-

because Mr. Arnold's opinion was consistent with the medical evidence in the record. Tr. at 33. However, the ALJ did not give great weight to Mr. Arnold's opinion that Plaintiff's finger dexterity was inadequate and his grip strength was diminished, especially in his right hand. The ALJ accorded great weight to Dr. Pinsky's opinion that Plaintiff suffered moderate impairment in all categories, as it was generally consistent with the evidence of record.

The ALJ gave little weight to the opinion of Dr. Sethi that Plaintiff was limited in his ability to sit, stand, walk, travel, lift, carry, and handle objects. The ALJ wrote that Dr. Sethi's opinion was conclusory, because Dr. Sethi offered no further explanation of Plaintiff's limitations or rationale for concluding that Plaintiff's abilities were so limited. Further, the ALJ gave little weight to the opinion of the agency physicians, because she believed that Plaintiff had greater limitations than assessed by the agency physicians.

With respect to Plaintiff's testimony, the ALJ asserted that Plaintiff did not suffer any additional damage to his hands while performing his delivery driving job. As a consequence, the ALJ questioned Plaintiff's testimony that the pain in his hands increased during the last two years that he performed that job. The ALJ ultimately concluded that, although Plaintiff was experiencing pain, the objective medical evidence did not demonstrate the existence of limitations of such severity as to have precluded Plaintiff from performing all work on a regular and continuing basis at any time from the alleged onset of disability. Tr. at 33.

### D. Weight assigned to medical opinions

Plaintiff contends that the ALJ contradicted herself when she gave little weight to the opinion of Dr. Lajiness, because a chiropractor is not an accepted medical source, but gave great weight to the opinion of Mr. Arnold, despite the fact that a physical therapist is not an accepted medical source. Plaintiff underscores the fact that Dr. Lajiness was a treating source, whereas Mr. Arnold only examined Plaintiff on one occasion. Plaintiff further contends that the ALJ contradicted herself when she gave great weight to the majority of the opinion of Mr. Arnold, except Mr. Arnold's conclusions that Plaintiff had diminished strength in his right hand as well as difficulty fingering with that hand.

-11-

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers, supra*, at 243 (6th Cir. 2007). If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

On the other hand, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' " *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. *Id.* citing 20 C.F.R. §404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* citing §404.1527(c)(6).

Finally, evidence from "other sources" may not be used to establish the existence of a medically determinable impairment or given controlling weight, however, the ALJ may use evidence from "other sources" to demonstrate the severity of the claimant's impairments and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d)(1); *Cruse v. Comm'r*, 502 F.3d 532, 541 (6th Cir.2007). "Other sources" include nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists. *Id.* When considering opinions from non-medical sources who have seen a plaintiff in a professional capacity, the ALJ should look to several factors,

-12-

including the opinion's consistency with other evidence, how long the source has known the individual, and how well the source explained his opinion. *Winning v. Comm'r of Soc. Sec.*, 661 F.Supp.2d 807, 820 (N.D.Ohio 2009) (citing *Cruse, supra*, at 541.

Here, the ALJ gave great weight to Mr. Arnold's opinion because it was supported by the record.  In fact, Dr. Lajiness opined, on July 2, 2009, that Plaintiff's range of motion in his spine was normal, there was no indication that he had limitations on his fine and gross manipulation, his gait was normal, and chiropractic treatment provided temporary pain relief. Tr. at 348.  Dr. Lajiness also noted that Plaintiff could use his extremities for functional tasks.  Likewise, after Plaintiff underwent manual muscle testing with Dr. Sethi on August 28, 2009, Dr. Sethi reported full strength in Plaintiff's hips, knees, feet, shoulders, elbows, wrists, and fingers.  Tr. at 382.  Dr. Sethi further reported normal grasp, manipulation, pinch, and fine coordination in both hands.  Plaintiff also had no muscle weakness or atrophy. His cervical, thoracic, and lumbar spine had normal range of motion, no curvature abnormalities, muscle spasms, or swelling. On March 11, 2010, Dr. Davis opined that Plaintiff had "[m]ild at best degenerative changes of [the] left knee and mild osteoarthritis of the left shoulder."  Tr. at 441.  At that time, Plaintiff opted to continue over-the-counter NSAIDs and physical therapy.  As a consequence, the ALJ did not err in giving great weight to Mr. Arnold's opinion, to the extent that it was supported by substantial evidence in the record.

Next, the ALJ did not err in giving little weight to Mr. Arnold's opinion that Plaintiff's finger dexterity was inadequate and that his grip strength was diminished, especially in his right hand.  Mr. Arnold's opinion with respect to the strength in Plaintiff's hands is not supported by substantial evidence in the record.  In fact, Dr. Lajiness and Dr. Sethi both observed that the strength in Plaintiff's hands was normal.  Finally, the ALJ did not err in giving little weight to the opinion of Dr. Lajiness.  Dr. Lajiness' opinion is directly contradicted by his own treatment notes as well as additional medical evidence in the record.

Because that portion of Mr. Arnold's opinion that was given great weight by the ALJ was supported by substantial evidence, the undersigned recommends that the Court find that Plaintiff's first argument based upon the weight given to the various opinions of "other sources" in the record has no merit.

### E. Credibility

Plaintiff contends that the ALJ erred when he did not credit Plaintiff's testimony regarding his debilitating pain. When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40.

Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Plaintiff cites *Germany-Johnson v. Commissioner of Social Security*, 313 Fed.Appx. 771,778 (6th Circ.2008) for the proposition that the ALJ may not "cherry pick" select portions of the medical record to discredit a claimant's complaints of pain. It is important to note that the ALJ in that case ended his analysis at Step Two and the plaintiff in that case suffered from fibromyalgia.

Here, the ALJ discounted Plaintiff's testimony that his pain had increased during the final two years that he was employed as a delivery driver because there was no evidence in the record that the severity of Plaintiff's impairments had worsened over time, or that Plaintiff suffered additional injury to his hand during the relevant time period. Tr. at 33. It should be noted that the ALJ did not totally reject Plaintiff's allegations, but rather, she determined that Plaintiff's allegations of the intensity, duration and limiting effects of her symptoms were not substantiated by the objective medical findings or other evidence in the record.

-14-

An ALJ is not required to accept a plaintiff's own testimony regarding her pain. *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). Accordingly, the undersigned recommends that the Court find that the ALJ did not err in discrediting Plaintiff's opinion regarding his pain, and, as a consequence, that Plaintiff's second argument predicated upon the ALJ's credibility assessment has no merit.

### F.     Plaintiff's RFC

In his final argument, Plaintiff contends that the ALJ erred when he did not include in the RFC: (1) limitations reflecting Plaintiff's inability to handle and finger due to problems with his hands; (2) limitations reflecting Plaintiff's inability to sit for long periods of time due to his back, knee, and shoulder problems; and (3) limitations reflecting Plaintiff's inability to withstand exposure to respiratory irritants due to his COPD.

The RFC is an indication of a claimant's work related abilities despite his limitations. See 20 C.F.R. §404.1545(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. See 20 C.F.R. §404.1545(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. §404.1545(a), and must consider all of a claimant's medically determinable impairments, both individually and in combination. See S.S.R. 96-8p.

Here, Plaintiff asserts that "[a]n ALJ 'may not substitute [her] own medical judgment for that of the treating physician where the treating physician's opinion is supported by the medical evidence.'" ECF Dkt. #14 at p. 17, quoting *Simpson v. Commissioner of Social Security*, 344 Fed.Appx. 181 (6th Cir.2009). To the contrary, and as previously addressed, substantial evidence in the record supports the RFC. Although Dr. Sethi opined that Plaintiff's ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects, and traveling, may be limited, Dr. Sethi offered no explanation for his conclusions. In fact, after Plaintiff underwent manual muscle testing with Dr. Sethi on August 28, 2009, Dr. Sethi reported full strength in Plaintiff's hips, knees, feet, shoulders, elbows, wrists, and fingers. Tr. at 382. Dr. Sethi further reported normal grasp, manipulation, pinch, and fine coordination in both hands. Plaintiff also had no muscle weakness or atrophy. Dr. Sethi observed that Plaintiff's cervical, thoracic, and lumbar

-15-

spine had normal range of motion, no curvature abnormalities, muscle spasms, or swelling. Plaintiff's lower extremities showed no edema or other problems, all of his joints showed normal range of motion, he was able to walk on his tiptoes and heels, and he could squat. Tr. at 380. Plaintiff did not use an ambulatory aid, and his gait was normal. Insofar as Dr. Sethi's objective findings were at odds with his opinion regarding Plaintiff's limitations, the ALJ did not err in declining to include Dr. Sethi's opinion in the RFC.

Plaintiff also argues that Dr. Lajiness' opinion regarding Plaintiff's limitations should have been included in the RFC. However, as previously stated, Dr. Lajiness' own treatment notes belie his conclusions regarding Plaintiff's limitations. Likewise, other substantial evidence in the record contravenes Dr. Lajiness' conclusion regarding Plaintiff's limitations.

Finally, with respect to Plaintiff's COPD, Dr. Khan performed a study on April 15, 2009 that established that Plaintiff's airway resistance was normal, as was his lung capacity. Tr. at 390. The study revealed only a mild obstructive ventilatory defect. Moreover, Plaintiff continues to smoke cigarettes, despite several recommendations from various physicians to stop smoking. Therefore, the ALJ did not err in not including greater pulmonary restrictions in the RFC.

Accordingly, the undersigned recommends that the Court find that the RFC fashioned by the ALJ in this case is supported by substantial evidence, and that Plaintiff's final argument does not have merit.

## **VI. CONCLUSION**

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case with prejudice.

DATE: July 16, 2014

          */s/George J. Limbert*
          GEORGE J. LIMBERT
          UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).